**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

DAVID W.,

                    Plaintiff,

        v.

COMM'R OF SOC. SEC.,

                    Defendant.

_____

No. 8:17-CV-0734
(CFH)

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| Schneider & Palcsik<br>57 Court Street<br>Plattsburgh, New York 12901<br>Attorney for plaintiff | MARK A. SCHNEIDER, ESQ. |
| Social Security Administration<br>Office of Regional General Counsel,<br>Region II<br>26 Federal Plaza, Rm. 3904<br>New York, New York 10278<br>Attorney for Defendant | PETER W. JEWETT, ESQ.<br>Special Assistant U.S. Attorney |

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

Currently before the Court, in this Social Security action filed by David W. ("Plaintiff")

against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant

to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings

and Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 13 and 14.)[1]  For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.   The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I. Relevant Background

## A. Factual Background

Plaintiff was born in 1972, making him 41 years old at the application date and 43 years old at the date of the ALJ's decision.  Plaintiff reported completing the twelfth grade and attending vocational school for welding.  Plaintiff has past work as a welder.  At the initial level, Plaintiff alleged disability due to spinal cord issues and numbness in his feet, hands, and shoulders.

## B. Procedural History

Plaintiff applied for Supplemental Security Income on February 27, 2014, alleging disability beginning July 6, 2013.  Plaintiff's application was initially denied on May 16, 2014, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at a hearing before ALJ Carl E. Stephan on September 15,

---

[1]  Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), FED. R. CIV. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  Dkt. No. 4.

2015.  (T. 33-48.)[2]  On March 30, 2016, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 7-25.)  On June 22, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1.)

## C. The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 12-21.)  First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 27, 2014, the application date.  (T. 12.)  Second, the ALJ found that Plaintiff's central cervical cord syndrome status post-C3-C4 disc excision/fusion and obesity are severe impairments.  (Id.)  Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. 12-13.)  Specifically, the ALJ considered Listing 1.04 (disorders of the spine).  (Id.)  Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work

> except that the claimant could lift and carry up to 20 pounds occasionally and up to 10 pounds continuously.  The claimant could sit for 2 hours at a time, to a total of 8 hours in an 8-hour workday, and stand and/or walk for 1 hour each at a time, to a total of 3 hours each in an 8-hour workday.  The claimant could frequently reach in all directions, handle, finger, feel, push, and pull with his upper extremities, and never operate foot controls

---

[2] The Administrative Transcript is found at Dkt. No. 10.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

with his left lower extremity. The claimant could frequently climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl; and never climb ladders, ropes, and scaffolds. The claimant could commercially operate a motor vehicle on a frequent basis. The claimant could only occasionally tolerate exposure to unprotected heights, humidity, wetness, extreme cold, and extreme heat. The claimant could never tolerate exposure to vibrations.

(T. 13-14.) Fifth, the ALJ found that Plaintiff is capable of performing past relevant work as a Combination Welder. (T. 19-21.) Sixth, and last, the ALJ found that Plaintiff is also capable of performing other jobs existing in significant numbers in the national economy. (Id.) The ALJ therefore concluded that Plaintiff is not disabled.

### D. The Parties' Briefings

### 1. Plaintiff's Motion for Judgment on the Pleadings

Generally, Plaintiff makes six arguments in support of his motion for judgment on the pleadings. (Dkt. No. 13, at 15-42 [Pl.'s Mem. of Law].) First, Plaintiff argues that the ALJ erred by giving too much weight to the opinion of non-examining medical expert Louis Fuchs, M.D., which Plaintiff argues is not substantial evidence to override the findings, opinions, and conclusions of the treating and examining sources. (Id. at 15-23.) Plaintiff also argues that the ALJ should have given controlling weight to the findings and opinions of Plaintiff's treating sources and that the ALJ improperly discounted the medical opinion of consultative examiner Nader Wassef, M.D. (Id. at 19-23.)

Second, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because Plaintiff is disabled by his cervical and lumbar spinal

disorder, he does not have the RFC to perform work due to his non-exertional limitation of pain, he is unable to perform work because of the side effects of his prescribed narcotic pain medications, and he is unable to work because of his obesity in combination with his other impairments. (Dkt. No. 13, at 24-32 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues that the ALJ erred by failing to credit Plaintiff's subjective testimony of pain even though it was supported by objective medical evidence regarding his spinal disorders and that the ALJ did not meet the Commissioner's burden of proof at Step Five that Plaintiff could perform any work on a sustained and regular basis. (Id. at 25-26, 29.) Plaintiff also argues that the ALJ did not fairly consider the use of and side effects of Plaintiff's prescription pain medication and did not discuss what light or sedentary jobs could be performed by a person who is queasy and nauseated and who cannot focus or concentrate. (Id. at 31.) Plaintiff additionally argues that the ALJ erred at Step Two by not finding Plaintiff's lumbar spinal spondylosis to be a severe impairment. (Id. at 27.) Plaintiff also notes that, although the ALJ did find Plaintiff's obesity to be a severe impairment, the RFC does not reflect any limitations due to obesity. (Id. at 32.)

Third, Plaintiff argues that the ALJ erred in rejecting Plaintiff's credibility without sufficient explanation or evidence. (Dkt. No. 13, at 32-38 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues that the ALJ's reasons for not crediting Plaintiff's testimony were not based on substantial evidence, including the ALJ's analysis indicating that Plaintiff never complained to doctors about medication side effects and noting Plaintiff did not try physical therapy or have an epidural injection. (Id. at 35-36.) Plaintiff also argues that the ALJ should have asked Plaintiff why he did not want to try steroid injections before holding that

against him relating to his credibility.  (Id. at 37.)  Plaintiff additionally argues that the ALJ failed to explain how Plaintiff's admitted ability to perform some of his activities of daily living would mean that he can perform light (or any) work.  (Id.)

Fourth, Plaintiff argues that the ALJ erred at Step Four by determining that Plaintiff could perform his past work as a welder because the Dictionary of Occupational Titles ("DOT") requires a person be able to perform medium work to fulfill the duties of a combination welder while the RFC limits Plaintiff to light work.  (Dkt. No. 13, at 38-40 [Pl.'s Mem. of Law].)  Plaintiff also argues that the vocational expert ("VE") erred in stating that there was no conflict between the occupational evidence she provided and the occupational information contained in the DOT and that the ALJ erred by relying upon the VE's unsupported opinion that Plaintiff could perform his prior job as a welder.  (Id. at 39-40.)

Fifth, Plaintiff argues that the ALJ did not meet the Commissioner's burden at Step Five to prove that Plaintiff could perform the other identified light jobs of toll collector, office helper, and inspector/hand packager.  (Dkt. No. 13, at 40-42 [Pl.'s Mem. of Law].)  Specifically, Plaintiff argues that there is not substantial evidence that he can perform light work and cites to Dr. Wassef's consultative opinion.  (Id. at 41.)  Plaintiff also argues that this Court should remand for payment of benefits.  (Id. at 42.)

Finally, Plaintiff argues that, if this Court does not remand for payment of benefits, this case should be assigned to a different ALJ on remand because the ALJ here has shown a strong bias against Plaintiff and his attorney.  (Id. at 42.)

## 2. Defendant's Motion for Judgment on the Pleadings

Defendant makes four arguments in support of her general contention that the Commissioner's determination that Plaintiff was not disabled is supported by substantial evidence. (Dkt. No. 14, at 5-13 [Def.'s Mem. of Law].)  First, Defendant argues that the ALJ properly weighed the medical evidence.  (Id. at 5-7.)  Specifically, Defendant argues that medical experts like Dr. Fuchs are highly qualified physicians who are experts in the evaluation of medical issues in disability claims and their opinions constitute expert opinion evidence which can be given great weight if supported by medical evidence of the record, as in this matter.  (Id. at 5.)  Defendant argues that the ALJ properly afforded great weight to Dr. Fuchs' opinion because Dr. Fuchs reviewed all of the medical evidence.  (Id.)  Defendant additionally indicates that Plaintiff lists the complaints he made to his doctors, failing to recognize that such comments are not medical findings but rather the doctors noting Plaintiff's complaints.  (Id. at 5-6.)  Defendant also argues that the ALJ considered Dr. Wassef's opinions, but correctly noted that the limitations opined were heavily reliant on Plaintiff's self-reported limitations, and in the case of the 2014 opinion, was dependent on Plaintiff's impending spinal surgery.  (Id. at 6-7.)

Second, Defendant argues that the ALJ's RFC finding is supported by substantial evidence.  (Dkt. No. 14, at 8-10 [Def.'s Mem. of Law].)  Specifically, Defendant argues that the ALJ's RFC determination was supported by Dr. Fuchs' opinion that Plaintiff retained the ability to perform a range of light work, including Dr. Fuchs' review of the medical evidence and specific indication that Plaintiff did not meet the criteria of Listing 1.04.  (Id. at 8-9.)  Defendant also argues that Plaintiff cites no medical opinion supporting the

argument that he is disabled by medication side effects and instead relies on his self-reports of side effects. (Id. at 9-10.) Defendant additionally argues that the ALJ noted the interplay between Plaintiff's obesity and other impairments and fully considered Plaintiff's obesity throughout the sequential evaluation. (Id. at 10.)

Third, Defendant argues that the ALJ's credibility finding was proper. (Dkt. No. 14, at 10-11 [Def.'s Mem. of Law].) Specifically, Defendant argues that the ALJ noted he considered Plaintiff's symptoms as well as their consistency with other evidence and evaluated the intensity, persistence, and limiting effects of those symptoms on Plaintiff's functioning. (Id.) Defendant also argues that the ALJ noted the medical evidence (including Dr. Wassef's May 2014 examination and Plaintiff's treatment notes following his surgery) undercuts Plaintiff's allegations of extreme limitations. (Id. at 11.) Defendant additionally argues that the ALJ adequately explained the reasons why Plaintiff's allegations were not consistent with the evidence including the patent inconsistency between the allegations and the objective medical evidence, Plaintiff's robust activities of daily living, and Dr. Fuchs' opinion. (Id.)

Fourth, Defendant argues that the ALJ's Step Four and Five determinations are supported by substantial evidence because the ALJ properly relied on the VE's responses to interrogatories, which included the notation that a person with Plaintiff's RFC could perform his past relevant work because it allows him to spend time in various static positions such as stooping, crouching, or sitting on a stool and was not dependent on the ability to walk or stand. (Dkt. No. 14, at 12-13 [Def.'s Mem. of Law].) Defendant also argues that the fact that the DOT descriptions of the jobs identified by the VE may not

include every single aspect of Plaintiff's limitations does not constitute a conflict and, in any event, any error at Step Four was harmless because the ALJ proceeded to Step Five and made an alternative finding. (Id. at 12.) Defendant argues that the Step Five determination is consistent with the VE's responses to interrogatories and that the ALJ posed hypothetical questions based upon his RFC determination for which there was substantial evidence in the record. (Id. at 12-13.)

## II. Relevant Legal Standard

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § 405(g); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); accord Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983), Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is

deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The five-step process is as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); accord McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thompson, 540 U.S. 20, 24 (2003).

### III. Analysis

#### A. Whether the ALJ Properly Considered Plaintiff's Impairments at Step Two and Step Three

At Step Two, the ALJ must determine whether the claimant has a severe impairment that significantly limits his physical or mental abilities to do basic work activities. 20 C.F.R. § 416.920(c). Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding,

remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations.  Taylor v. Astrue, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing Gibbs v. Astrue, No. 07-CV-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. §§ 404.1521(b)(1)-(5)).  "Although the Second Circuit has held that this step is limited to 'screening out de minimis claims,' [] the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe."  Taylor, 32 F. Supp. 3d at 265 (quoting Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995); Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).  Overall, the claimant retains the burden of presenting evidence to establish severity.  See id. (citing Miller v. Comm'r of Soc. Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

This Court has indicated the failure to find a specific impairment severe at Step Two is harmless where the ALJ concludes (a) there is at least one other severe impairment, (b) the ALJ continues with the sequential evaluation, and (c) the ALJ provides explanation showing she adequately considered the evidence related to the impairment that is ultimately found non-severe.  Fuimo v. Colvin, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing Dillingham v. Astrue, No. 09-CV-0236, 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), Report and Recommendation adopted by 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); see also Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order) (finding that any error in failing to find plaintiff's anxiety and panic disorder severe at Step Two would be harmless because the ALJ found other severe impairments present,

12

continued through the sequential evaluation process, and specifically considered plaintiff's anxiety and panic attacks at those subsequent steps).

"Plaintiff has the burden of proof at step three to show that her impairments meet or medically equal a Listing." Rockwood v. Astrue, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009) (citing Naegele v. Barnhart, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006)).  "To meet a Listing, Plaintiff must show that her medically determinable impairment satisfies all of the specified criteria in a Listing." Rockwood, 614 F. Supp. 2d at 272 (citing 20 C.F.R. § 404.1525(d)).  "If a claimant's impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." Rockwood, 614 F. Supp. 2d at 272 (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990)).  Additionally, a court may be able to uphold an ALJ's finding that a claimant does not meet a Listing even where the decision lacks an express rationale for that finding if the determination is supported by substantial evidence. Rockwood, 614 F. Supp. 2d at 273 (citing Berry, 675 F.2d at 468).

Plaintiff argues that the ALJ erred at Step Two by not finding Plaintiff's lumbar spinal spondylosis to be a severe impairment.  (Dkt. No. 13, at 27 [Pl.'s Mem. of Law].)  Plaintiff also argues that he is disabled by his cervical and lumbar spine disorder and/or by a combination of his impairments, symptoms, and the use/side effects of narcotic pain medication.  (Id. at 24-32.)  The Court finds these arguments unpersuasive.

The ALJ found that Plaintiff's central cervical cord syndrome status post-C3-C4 disc excision/fusion and obesity are severe impairments.  (T. 12.)  The ALJ's finding and accompanying analysis indicates that, although he did not find Plaintiff's alleged lumbar spinal spondylosis to be a severe impairment, he did find at least one physical impairment

severe and continued with the sequential evaluation. (T. 12-21.) Further, the ALJ's overall decision provides sufficient explanation showing he adequately considered the evidence related to Plaintiff's alleged impairments including those he did not find to be severe. (T. 12-13, 15-19.) See Fuimo, 948 F. Supp. 2d at 269-70; Reices-Colon, 523 F. App'x at 798. In the alternative, the Court finds that any error by the ALJ in failing to find Plaintiff's lumbar spinal spondylosis severe would be harmless because he did find other impairments severe, continued with the sequential evaluation, and provided adequate explanation in his decision showing he properly considered the evidence related to Plaintiff's various impairments. (Id.)

Further, the Court finds that the ALJ provided adequate analysis of Plaintiff's impairments in relation to the Listings and that substantial evidence supports the ALJ's finding that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (T. 12-13.) Plaintiff's argument suggests that he is disabled by his cervical and lumbar spinal disorder even if he does not *per se* meet the requirements of Listing 1.04 (disorders of the spine). (Dkt. No. 13, at 24-42 [Pl.'s Mem. of Law].) The Court's review of the record does not support this contention or a finding that the ALJ did not properly consider Plaintiff's impairments under Listing 1.04. The ALJ's decision indicates he specifically considered Plaintiff's impairments in regards to Listing 1.04, found that Plaintiff did not meet this listing, and also took Plaintiff's obesity into consideration pursuant to Social Security Ruling ("SSR") 02-1p. (T. 12-13.)

14

Finally, as Defendant points out, medical expert Dr. Fuchs specifically opined that Plaintiff did not meet the criteria of that listing as his examinations generally showed he was neurologically intact, with a few instances of hyper-reflexia and slight weakness in the left foot.  (Dkt. No. 14, at 9-10 [Def.'s Mem. of Law]; T. 397.)  The Court notes that the ALJ gave great weight to Dr. Fuchs' opinion in determining Plaintiff's RFC.  (T. 18.)  Further, in considering the ALJ's analysis of Plaintiff's impairments in relation to the Listings, the Court declines any invitation to reweigh the evidence before the ALJ.  See Lewis v. Colvin, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (noting that it is not the role of a court to "re-weigh evidence" because "a reviewing court 'defers to the Commissioner's resolution of conflicting evidence'" where that resolution is supported by substantial evidence) (quoting Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012); citing Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)); Vincent v. Shalala, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

For the reasons above, the ALJ's findings regarding Plaintiff's impairments at Step Two and Step Three are supported by substantial evidence and remand is therefore not required on these grounds.

### B. Whether Substantial Evidence Supports the ALJ's Analysis of the Opinion Evidence and Plaintiff's RFC

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 416.927(c).  "'[T]he opinion of a claimant's treating physician as to the nature and

severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quoting Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" Greek, 802 F.3d at 375 (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013)). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." Blinkovitch v. Comm'r of Soc. Sec., No. 15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), Report and Recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order)). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" Greek, 802 F.3d at 375 (quoting Burgess, 537 F.3d at 129). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 416.927(c)(1)-(6).

RFC is defined as "'what an individual can still do despite his or her limitations

. . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work

activities in an ordinary work setting on a regular and continuing basis.'" Pardee v. Astrue,

631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d

Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider

a claimant's physical abilities, mental abilities, symptomology, including pain and other

limitations which could interfere with work activities on a regular and continuing basis."

Pardee, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny

impairment-related limitations created by an individual's response to demands of work

. . . must be reflected in the RFC assessment.'" Hendrickson v. Astrue, No. 11-CV-0927,

2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857,

at *8). The RFC determination "must be set forth with sufficient specificity to enable [the

Court] to decide whether the determination is supported by substantial evidence." Ferraris

v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both

examining and non-examining State agency medical consultants because these

consultants are qualified experts in the field of social security disability. See also Frey ex

rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of

a State agency medical consultant constitutes expert opinion evidence which can be given

weight if supported by medical evidence in the record."); Little v. Colvin, No. 14-CV-0063,

2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified

as experts in the evaluation of medical issues in disability claims. As such, their opinions

may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

In May 2014, Dr. Wassef conducted a consultative internal medicine examination and noted that Plaintiff appeared to be in no acute distress, had a normal gait and stance, could walk on his heels and toes without difficulty, could do a full squat, used no assistive devices, needed no help changing for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty. (T. 240.) Dr. Wassef noted Plaintiff was in discomfort during an examination of the range of motion of the neck, but had full range of motion of the neck and lumbar spine, negative straight leg raise testing bilaterally, and full range of motion of the bilateral shoulders, elbows, forearms, wrists, hips, knees and ankles. (T. 241.) Plaintiff's deep tendon reflexes were physiologic and equal in the upper and lower extremities and he had numbness in the left buttock area and left thigh down to his left knee as well as numbness in both thumbs and fourth/fifth fingers in the bilateral hands at times. (Id.) He had full strength in the upper and lower extremities, intact hand and finger dexterity, and full grip strength bilaterally. (Id.) He reported cooking every day, cleaning twice a week, doing laundry and shopping once a week, and showering and dressing himself every day. (T. 239.)

Dr. Wassef diagnosed a past history of surgery for brain tumor (which was not cancer), lower back pain (etiology had not been established), bilateral shoulder pain, bilateral leg and foot pain with weakness, and a prior motorcycle accident resulting in injury to Plaintiff's neck and the bilateral shoulders, legs and feet. (T. 241-42.) He noted Plaintiff would soon be having surgery on his cervical spine because of complex multilevel cord

18

syndrome. (T. 242.) Dr. Wassef opined that Plaintiff had marked limitations in regard to lifting, pushing, pulling, handling, gripping, bending, squatting, standing, walking, and climbing and descending stairs as well as operating foot controls. (Id.)

In September 2015, Dr. Wassef again examined Plaintiff for a consultative orthopedic examination and noted Plaintiff appeared to be in no acute distress, had a normal gait and station, was unable to stand and walk on his toes or squat, used no assistive device, needed no help changing for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty. (T. 344.) Plaintiff had intact hand and finger dexterity, full grip strength bilaterally (though he stated he had numbness in his left hand, left thumb, and left fourth and fifth fingers as well as numbness in his right thumb and fourth and fifth fingers), diffuse tenderness in the cervical spine area with some limitation on extension, and a full range of motion of the bilateral shoulders, elbows, wrists and fingers. (T. 344.) He had full strength in the proximal and distal muscles, no muscle atrophy or sensory abnormality, and physiologic/equal reflexes in the upper and lower extremities. (T. 344-45.) Plaintiff also had diffuse tenderness in the lumbar spine area with full range of motion and negative straight leg raising testing bilaterally as well as full range of motion of the bilateral hips, knees and ankles. (T. 345.) He reported numbness in the left shoulder area, ventral aspect of the left forearm, bilateral hands, buttocks, and both lower extremities extending into his feet and toes. (Id.) He reported cooking, cleaning, and doing laundry. (T. 344.)

Dr. Wassef diagnosed a past history of surgery for brain tumor (which was not cancerous), discogenic lumbar pain and radiculopathy, a recent history of surgery on his

cervical spine (fusion at C3-C4), bilateral shoulder pain, bilateral leg and foot pain associated with weakness, and a prior motorcycle accident resulting in injuries to Plaintiff's neck and the bilateral shoulders, legs and feet. (T. 345.) Dr. Wassef opined Plaintiff had moderate limitations in regard to standing, walking, climbing and descending stairs, bending, squatting, lifting, pushing, pulling, handling, and operating foot controls. (T. 345-46.) More specifically, he opined Plaintiff could occasionally lift and carry up to 10 pounds, sit for six hours at a time for a total of six hours in an 8-hour workday, stand and walk for one hour each for a total of one hour each, and occasionally use his arms and hands for reaching, handling, fingering, feeling, and pushing/pulling. (T. 347-49.) Dr. Wassef also opined Plaintiff could occasionally use his feet for operating foot controls, occasionally climb stairs and ramps, stoop and kneel, and never climb ladders or scaffolds, balance, crouch or crawl. (T. 349-50.) He could occasionally tolerate unprotected heights, moving mechanical parts, and operating a motor vehicle and never tolerate extreme cold or vibrations. (T. 351.)

The ALJ noted both opinions from Dr. Wassef and afforded little weight to them, indicating the first opinion was not relevant because it predated Plaintiff's spine surgery and the record reflected fewer restrictions following that surgery. (T. 18-19.) The ALJ indicated that the first opinion also assessed marked restrictions despite Plaintiff displaying full strength in all extremities, full grip strength, intact reflexes, and an ability to squat and perform activities without help. (Id.) The ALJ also noted Dr. Wassef examined Plaintiff only once after his surgery and did not have the opportunity to review the entire record before rendering his opinion. (Id.) The ALJ indicated Dr. Wassef apparently relied heavily

on Plaintiff's subjective report and seemed to uncritically accept most, if not all, of his report. (Id.) The ALJ noted the existence of good reasons for questioning the reliability of Plaintiff's subjective complaints. (Id.)

In January 2016, medical expert Dr. Fuchs provided responses to medical interrogatories noting impairments including central cervical cord syndrome status post C3-C4 disc excision/fusion and indicating Plaintiff did not meet/equal a listed impairment but was somewhat limited with exams showing altered reflexes and dexterity. (T. 396, citing T. 241, 258, 284, 342-53.) Dr. Fuchs further noted Plaintiff did not meet Listing 1.04 as exams showed generally intact neurology except for hyper-reflexia and slight weakness in the left foot. (T. 397.) Dr. Fuchs opined Plaintiff could occasionally lift and carry up to 20 pounds and continuously lift and carry up to 10 pounds, sit for two hours at a time for a total of eight hours in an eight-hour workday, and stand and walk for one hour each for a total of three hours each in an eight-hour workday. (T. 399-400.) Plaintiff could frequently use his arms and hands for reaching, handling, fingering, feeling and pushing/pulling, never use his left foot for operation of foot controls, frequently climb stairs and ramps, occasionally balance, stoop, kneel, crouch and crawl, and never climb ladders or scaffolds. (T. 401-02.) He could continuously tolerate moving mechanical parts, frequently tolerate operating a motor vehicle, occasionally tolerate unprotected heights, humidity, wetness and extreme cold/heat, and never tolerate vibrations. (T. 403.)

The ALJ afforded great weight to Dr. Fuchs' opinion and noted Dr. Fuchs had Social Security Program experience, which he applied in rendering this opinion. (T. 18.) The ALJ also noted that Dr. Fuchs was able to review the entire medical record before delivering

his opinion and that his opinion was consistent with the record taken as a whole. (Id.) The ALJ further noted that, although Dr. Fuchs was a non-examining source, his opinion deserved great weight, particularly in a case like this where there existed a number of other reasons to reach similar conclusions. (Id.)

Plaintiff argues that the ALJ erred in his analysis of the opinion evidence, that the ALJ did not properly consider Plaintiff's subjective testimony of pain or his use of pain medication and the related side effects, and that the ALJ's RFC determination is not supported by substantial evidence because Plaintiff is disabled by his cervical and lumbar spinal disorder, pain and obesity as well as the side effects of his prescribed narcotic pain medication. (Dkt. No. 13, at 15-32 [Pl.'s Mem. of Law].) The Court finds these arguments unpersuasive.

The ALJ's RFC analysis indicates a thorough and detailed consideration of the examining and non-examining opinions of record, the medical evidence pertaining to Plaintiff's impairments and treatment, and Plaintiff's testimony. (T. 14-19.) In his decision, the ALJ indicated he had considered Plaintiff's symptoms based on the requirements of 20 C.F.R. § 416.929 and SSRs 96-4p and 16-3p and had considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (T. 14.) According to the Court's review, the ALJ's analysis adequately summarizes and discusses the evidence of record in determining Plaintiff's RFC. (T. 14-19.)

Further, the ALJ's analysis of the opinion evidence provides sufficient consideration of the opinions of record and specific reasons for the weight afforded to each of them,

reasons supported by the objective evidence of record. (T. 18-19.) Further, the ALJ was entitled to rely on the opinion of non-examining medical expert Dr. Fuchs if it was better supported or more consistent with the evidence as a whole. See Bliss v. Colvin, No. 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); accord Petell v. Comm'r of Soc. Sec., No. 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014). Again, the Court declines any invitation to reweigh the evidence before the ALJ. See Lewis, 122 F. Supp. 3d at 7.

Finally, the Court's review of the evidence does not support Plaintiff's arguments that his impairments and symptoms in combination render him disabled, that the ALJ erred in failing to find him disabled based on the evidence of record, or that the ALJ erred in reviewing the evidence of record. It was within the ALJ's purview to resolve any material conflicts in the evidence and the various opinions of record. See Bliss, 2015 WL 457643, at *7; Petell, 2014 WL 1123477, at *10. Because the ALJ properly considered the opinions and provided sufficient explanation for his analysis, the Court finds that the ALJ's RFC analysis (including his analysis of the opinion evidence and Plaintiff's testimony) is supported by substantial evidence. Remand is therefore not required on these grounds.

### C. Whether Substantial Evidence Supports the ALJ's Credibility Determination

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations. "'An administrative law

judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" Schlichting v. Astrue, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)).  The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that, "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" Schlichting, 11 F. Supp. 3d at 206 (quoting Carroll, 705 F.2d at 642; Aponte v. Sec'y, Dep't of Health and Human Servs., 728 F.2d 588, 591 (2d Cir. 1984)).  Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference.  Weather v. Astrue, 32 F. Supp. 3d 363, 371 (N.D.N.Y. 2012) (citing Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir. 1999)). Here, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not generally consistent with the evidence.  (T. 16.) Plaintiff argues that the ALJ's reasons for not crediting Plaintiff's testimony were not based on substantial evidence and that the ALJ failed to explain how Plaintiff's admitted activities of daily living would mean that he can perform light (or any) work.  (Dkt. No. 13, at 32-38 [Pl.'s Mem. of Law].)  The Court finds these arguments unconvincing.

The ALJ noted that he considered factors pursuant to 20 C.F.R. § 416.929 and SSR 16-3p. (T. 14, 16-17.) The ALJ outlined three main reasons for his finding that Plaintiff's allegations were not entirely consistent with the evidence. (T. 17.) These included the inconsistency between Plaintiff's allegations and the objective medical evidence, Plaintiff's many reportedly intact activities of daily living, and the inconsistency between Plaintiff's allegations and Dr. Fuchs' opinion (to which the ALJ assigned great weight in determining Plaintiff's RFC). (Id.) The Court finds that these are all valid reasons provided by the ALJ and expanded upon by the ALJ in his decision. (T. 16-17.)

Based on the Court's review of the record, the Court finds that the reasons provided by the ALJ are sufficient to support his credibility determination. For example, the ALJ discussed Plaintiff's treatment, noting that although he underwent surgery, the record indicated that the surgery was generally successful in relieving his symptoms and narcotic pain medication had been relatively effective in controlling his pain symptoms. (T. 17.) The ALJ explicitly noted Plaintiff's hearing testimony alleging medication side effects, but noted that the record reflected Plaintiff told his pain management specialist that he did not have any side effects and that Plaintiff failed to follow-up on recommendations made by his treating doctor including physical therapy and epidural injections. (Id.)

Further, as noted by the ALJ, Plaintiff reported intact activities of daily living including caring for pets by himself, preparing simple meals daily, performing all housework and yard work, being able to drive and go out alone, shopping for himself, and handling money. (T. 17, 135-41.) Plaintiff also reported to Dr. Wassef that he cooked, cleaned, did laundry and shopping, showered and dressed himself. (T. 239, 344.) Contrary to Plaintiff's

argument, the ALJ's decision does not explicitly indicate that such activities of daily living by themselves are consistent with an ability to perform a modified range of light work, but rather that such activities are not consistent with the degree of impairment alleged by Plaintiff.  (T. 16-17.)

For the reasons above, the Court finds that the ALJ's credibility determination is supported by substantial evidence.  Remand is therefore not required on this basis.

### D. Whether Remand is Required Regarding the ALJ's
### Step Four and Step Five Findings

"[T]he Commissioner asks, at Step Four, 'whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform . . . her past work.'" Cichocki v. Astrue, 729 F.3d 172, 176 (2d Cir. 2013) (quoting Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000)) (internal citations omitted).  "[T]he claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003) (citing Jock v. Harris, 651 F.2d 133, 135 (2d Cir. 1981); SSR 82-62).

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'"  McIntyre, 758 F.3d at 150 (quoting Brault v. Soc. Sec. Admin., 683 F.3d 443, 445 (2d Cir. 2012)).  "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert

based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved." McIntyre, 758 F.3d at 151 (quoting Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981)). "If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." Pardee, 631 F. Supp. 2d at 211 (citing Melligan v. Chater, No. 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

Here, the ALJ found that Plaintiff is capable of performing past relevant work as a Combination Welder (identified by the VE via responses to vocational interrogatories as medium exertional level, heavy as performed) and that there are other jobs existing in the national economy that Plaintiff is also able to perform. (T. 19-21, 190-206.) Plaintiff argues that the ALJ erred at Step Four because Plaintiff's past work as a welder requires a medium exertional level while the ALJ's RFC limits Plaintiff to light work and that the ALJ erred by relying upon the VE's unsupported opinion that Plaintiff could perform this past work. (Dkt. No. 13, at 38-40 [Pl.'s Mem. of Law].) Plaintiff also argues that the VE erred in stating that there was no conflict between the occupational evidence she provided and the occupational information contained in the DOT. (Id. at 39-40.) The Court finds these arguments persuasive but finds that remand is not required.

Plaintiff is correct in that the ALJ's decision contains a conflict between his RFC finding indicating a modified range of light work and his Step Four finding that Plaintiff can perform past relevant work as a Combination Welder which requires a medium exertional

level.  (T. 13, 19-20.)  The ALJ's Step Four finding appears to rely on the VE testimony indicating such past relevant work was able to be performed by an individual with Plaintiff's RFC for a modified range of light work.  (T. 13, 19-20, 201-02.)  This finding and the ALJ's accompanying analysis inexplicably fails to address the conflict between the VE's testimony and the exertional requirement of Plaintiff's past relevant work as a Combination Welder.  (T. 19-20.)  In the absence of the ALJ's Step Five finding, this conflict and lack of explanation would warrant remand.

However, the Court finds the ALJ's error at Step Four to be harmless because the ALJ continued the sequential evaluation to Step Five and found that, in the alternative, Plaintiff could perform other jobs existing in significant numbers in the national economy.  (T. 20-21.)  Plaintiff argues that the ALJ did not meet the Commissioner's burden at Step Five to prove that Plaintiff could perform the other identified light jobs because there is not substantial evidence that he can perform light work.  (Dkt. No. 13, at 40-42 [Pl.'s Mem. of Law].)  The Court finds this argument unpersuasive.

The ALJ's Step Five finding is based on the VE's testimony indicating that an individual with Plaintiff's RFC for a modified range of light work would be able to perform other jobs including toll collector (DOT code 211.462-038, light exertional level), office helper (DOT code 239.567-010, light exertional level), and inspector/hand packager (DOT code 559.687-074).  (T. 20-21, 201, 203.)  The Court's review of these positions and their DOT codes confirm they are all within the light exertional level, consistent with the ALJ's RFC determination.  (T. 13, 20-21, 203.)  Because the Court has already determined that the ALJ's findings at the previous steps (including his analysis of the opinion evidence and

Listings as well as his considerations regarding Plaintiff's impairments, RFC, and credibility) are supported by substantial evidence, his determination at Step Five based in part on those previous findings is likewise supported by substantial evidence. Remand is therefore not required on this basis.

## IV. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby;

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated:     November 20, 2018
           Albany, New York

Christian F. Hummel
U.S. Magistrate Judge